

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 25, 2007

**BY HAND AND ECF**

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
Foley Square
New York, New York 10007

    Re: **United States v. William Davis,**
        **07 Cr. 468 (RJS)**

Dear Judge Sullivan:

    The parties are scheduled to appear before Your Honor on Wednesday, November 28, 2007, at 12:00 p.m., in connection with the defendant's pending motion to suppress the physical evidence recovered by the Ardsely Police Department from the defendant's safe. Since the parties last appearance before Judge Karas, the Government has conducted additional research, and now concludes that the defendant's motion can be decided without an evidentiary hearing. Accordingly, in advance of the November 28 conference, the Government respectfully submits this letter both to apprise the Court of its legal findings and to recommend that defendant's motion can be denied without any evidentiary hearing, because the defendant lacks standing to challenge the warrantless search of his safe.

### Background

    The defendant is charged with [i] possessing a firearm after having been convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1), and [ii] possession of child pornography, in violation of Title 18, United States Code, Section 2252A(A)(5)(B) and (b)(2). The Indictment alleges that from January 2006 to October 2006, the defendant possessed five Hirtenberger Patronen 9 millimeter pieces of ammunition and images of child pornography created outside the State of New York. Both the ammunition and the child pornography were found

The Honorable Richard J. Sullivan
October 25, 2007
Page 2

by polices officers from the Ardsely Police Department, who opened the safe. (This prosecution was referred to the Federal Bureau of Investigation after the defendant's safe had been opened and the contraband discovered in connection with an investigation of the defendant by the Westchester County District Attorney's Office (the "DA"). A copy of the DA's Indictment of the defendant is attached hereto as Exhibit A. The defendant was convicted on all counts in August 2007 (see DA Press Release attached hereto as Exhibit B).)

The defendant filed a motion to suppress "physical evidence obtained in violation of the Fourth Amendment to the United States Constitution, or granting an evidentiary hearing on this motion." (Defendant's Notice of Motion to Suppress). In support of this motion, the defendant submitted a Declaration in which he states that, in 2006 and 2007, he owned a safe in which he kept his personal belongs and that he expected the contents "would remain private." (Declaration of William Davis dated June 13, 2007 ("Davis Decl.") ¶ 3.) The defendant also states that "[a]t no time did [he] abandon the safe, and at no time did [he] consent to the officers' opening of the safe." (Davis Decl. ¶ 5.) Based on these allegations, among others, the defendant asserts that the warrantless search of his safe violated his constitutional rights, and the physical evidence contained therein should be suppressed.

## Legal Framework

### A. The Fourth Amendment Applies Only Where A Person Has a Reasonable Expectation of Privacy

The Fourth Amendment prohibits unreasonable searches and seizures where a person has a reasonable expectation of privacy. See United States v. Salvucci, 448 U.S. 83, 91-93 (1980); Rakas v. Illinois, 439 U.S. 128, 143 (1978). The Supreme Court has adopted the two-part test enunciated by Justice Harlan in Katz v. United States, 389 U.S. 347 (1967) (Harlan, J., concurring), to determine whether a person's expectation of privacy is legitimate: first, the individual must have an actual subjective expectation of privacy; and second, society must be prepared to recognize that expectation as objectively reasonable. Id. at 361. The first branch of Justice Harlan's formulation may appear to require "that a person's actual state of mind be determined." United States v. Taborda, 635 F.2d 131, 137 (2d

The Honorable Richard J. Sullivan
October 25, 2007
Page 3

Cir. 1980). This is not the case: "We take this first factor to mean in essence that the defendant must have acted in such a way that it would have been reasonable for him to expect that he would not be observed. This, plainly, is an objective rather than a subjective requirement." Id. The second branch "requires that the action occur in a place in which society is prepared, because of its code of values and its notions of custom and civility, to give deference to a manifested expectation of privacy." Id. "[T]he expectations of privacy protected by the fourth amendment, as a general rule, should be measured in objective terms." United States v. Sledge, 650 F.2d 1075, 1077 (9th Cir. 1981).

Where the search was done without a warrant, a challenging defendant must demonstrate a personal expectation of privacy in the place that was searched to successfully invoke Fourth Amendment protection. See United States v. Haqq, 278 F.3d 44, 47 (2d Cir. 2002). Further, a defendant's privacy interest must be in the particular place searched or item seized; and this particularity requirement applies separate and apart from the place where the object was located. See id. (stating that a court should focus "on the defendant's expectation of privacy in the object apart from his expectation of privacy in the home").

B. **Warrantless Searches of Abandoned Property Are Permissible Under the Fourth Amendment**

A warrantless search or seizure of abandoned property is not a violation of the Fourth Amendment. Abel v. United States, 362 U.S. 217, 240-41 (1960); see also United States v. Springer, 946 F.2d 1012, 1017 (2d Cir. 1991); United States v. Lee, 916 F.2d 814, 818 (2d Cir. 1990). When a person gives up his expectation of privacy in a piece of property, that property is considered abandoned for purposes of search and seizure. See United States v. Thomas, 864 F.2d 843, 845 (D.C. Cir. 1989); see also Haqq, 278 F.3d at 47 (supra); United States v. Rem, 984 F.2d 806, 810 (7th Cir. 1993) ("The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object."); United States v. Callabrass, 607 F.2d 559, 566 (2d Cir. 1979) (Oakes, J., dissenting) (same).

The concept of abandonment under property law does not control the abandonment inquiry under the Fourth Amendment. See

The Honorable Richard J. Sullivan
October 25, 2007
Page 4

Thomas, 864 F.2d at 845 ("[I]t is possible for a person to retain a property interest in an item, but nonetheless to relinquish his or her reasonable expectation of privacy in the object."); see also United States v. Wyler, 502 F. Supp. 959, 966-968 (S.D.N.Y. 1980) (stating that abandonment for Fourth Amendment purposes "is not a conclusion premised upon traditional theories of property right"). Consequently, ownership of property does not automatically establish a reasonable expectation of privacy. See Rawlings v. Kentucky, 448 U.S. 98, 104 (1980) ("Ownership of the searched item, though a fact to be considered, is neither in itself sufficient to establish a legitimate expectation nor a substitute if the requisite legitimate expectation of privacy is lacking."); Gudema v. Nassau County, 163 F.3d 717, 722 (2d Cir. 1998) ("Mere ownership of property does not establish a legitimate expectation of privacy unless the owner vigilantly protects the right to exclude others.").

The law does not require that a person "assertively clutch an object in order to retain the protection of the fourth amendment." Thomas, 864 F.2d at 846. But the absence of possession is a fact to be considered, and "may often result in a finding that an accused had no legitimate expectation of privacy because the absence of right to exclude others from access is an important factor militating against a legitimate expectation of privacy." Rawlings, 448 U.S. at 104.

Abandonment is a question of fact, to be decided in objective terms on the basis of all the relevant facts and circumstances. See United States v. Levasseur, 816 F.2d 37, 44 (2d Cir. 1987); United States v. Sledge, 650 F.2d 1075, 1077 (9th Cir. 1981). In determining whether property has been abandoned, the Court considers the totality of the relevant circumstances. Hoelzer v. City of Stamford, Conn., 933 F.2d 1131, 1138 (2d Cir. 1991) ("Because proof of abandonment turns on intent, court must take into consideration all relevant facts."). Furthermore, the facts and circumstances relevant to the Court's abandonment inquiry are not limited to those that were known to the officers at the time that the search was conducted. "Rather, subsequently discovered events may support an inference that [the defendant] had already chosen, and manifested [his] decision, not to return to the property." Levasseur, 816 F.2d at 44.

The Honorable Richard J. Sullivan
October 25, 2007
Page 5

The abandonment inquiry focuses on objective intent. See Thomas, 864 F.2d at 845 ("To determine whether there is abandonment in the fourth amendment sense, the district court must focus on the intent of the person who is alleged to have abandoned the place or object."). To prove abandonment, the government must establish "that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized." United States v. Stephens, 206 F.3d 914, 917 (9th Cir. 2000). A Court must look only "to the external manifestations of [the defendant's] intent <u>as judged by a reasonable person possessing the same knowledge available to the government agents</u>" at the time of the search. United States v. Rem, 984 F.2d 806, 810 (7th Cir. 1993) (emphasis supplied). The Court may infer abandonment from "words spoken, acts done, <u>and other objective facts</u>." Id. (quoting United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973)) (emphasis supplied). The defendant's subjective intent, which could be "any hindsight excuse that fits the situation," Rem, 984 F.2d at 810, is irrelevant to the abandonment inquiry. Id.

Where a defendant has abandoned his reasonable expectation of privacy, he lacks standing to challenge any warrantless search or seizure of the property found to be abandoned. See, e.g., United States v. Hayes, 120 F.3d 739, 741 (8th Cir. 1997).

### Discussion

Upon further research, the Government submits that the Court can decide the defendant's motion to suppress without an evidentiary hearing. As explained below, the officers of the Ardsey Police Department opened the defendant's safe based on their objective belief that the defendant had abandoned it. That the defendant did not grant the officers "permission" to open the safe or personally expected that the contents would remain private is of no moment. Officers need not rely on a defendant's lack of consent or expectation when finding that a safe, for example, is abandoned and (therefore) can be opened without a warrant. Such is the case here.

The Honorable Richard J. Sullivan
October 25, 2007
Page 6

      Although the defendant states that he expected the contents of the safe to remain private, he has placed no fact at issue that would have made a reasonable person in the searching officers' positions to believe that the defendant intended to retain an expectation privacy in the object (the safe) or its contents (the child pornography and the ammunition). For the reasons to follow, the Court should deny the defendant's motion without any hearing.

**A.   Defendant's Declaration**

      The defendant submits that the physical evidence obtained from a safe belonging to him -- including CD-ROMs containing images of child pornography and five rounds of live ammunition contained therein -- should be suppressed because [i] the officers failed to obtain a search warrant before opening the safe; [ii] the officers did not have the defendant's permission to open the safe; [iii] no exigent circumstances justify the opening of the safe; and [iv] the defendant denies abandoning the safe. (Declaration of Steven M. Statsinger, Esq. dated June 13, 2007 ("Statsinger Decl.") ¶¶ 5-8.)

**B.   The Defendant Abandoned the Safe and Therefore Lacks Standing to Challenge Its Warrantless Search**

      The defendant abandoned any legitimate expectation of privacy in the safe, and therefore lacks standing to challenge its warrantless search.

    **1.   The Defendant Manifested an Intent to Abandon the Safe**

      An objective evaluation of the facts and circumstances support a finding that the officers were reasonable in concluding that the defendant intended to abandon the safe and its contents. In making this evaluation, the Court must rely on the defendant's objective manifestations of intent; a post-search, subjective claim that the defendant did not intend to abandon the safe is irrelevant to the Court's abandonment inquiry. See United States v. Rem, 984 F.2d 806, 810 (7th Cir. 1993). It does not matter that the defendant's actions (or lack thereof) did not amount to an unambiguous act of intentional abandonment. See United States v. Cowan, 396 F.2d 83, 87 (2d Cir. 1968) ("Abandonment does not require performing a ritual; rather it is a question of

The Honorable Richard J. Sullivan
October 25, 2007
Page 7

intent."). Rather, the question is whether the police officers who searched the safe could reasonably conclude that the defendant intended to relinquish possession of it. Rem, 984 F.2d at 810 ("An expectation of privacy is a question of intent which 'may be inferred from words spoken, acts done, and other objective facts.'"). Thus any claim or statement by the defendant that he did not abandon the safe is irrelevant and is merely ipse dixet. The defendant must point to specific facts that bear upon the officers' abandonment determination, and he identified none.

An analysis of the defendant's objective manifestations of intent to abandon the safe must begin with the Supreme Court's leading decision addressing the legitimacy of a warrantless search of abandoned property -- Abel v. United States, 362 U.S. 217 (1960). In Abel, the defendant was arrested in his hotel room, pursuant to an administrative warrant for deportation, by agents of the Immigration and Naturalization Service. The defendant was suspected of espionage by the FBI and was believed by the FBI to be residing illegally in the United States. Id. at 220-22. After placing the defendant under arrest, the INS agents conducted a search of his person and the hotel room. Id. at 223. The agents did not have a search warrant, nor did they obtain consent to the search from the defendant. Id. When the INS agents completed the search, the defendant was told to pack the belongings that he wished to take with him. Id. at 224. He deliberately chose not to pack several things, some of which he put into a wastepaper basket in the hotel room. When his belongings had been completely packed, the defendant agreed to check out of the hotel, paid his bill, and was taken along with his baggage to INS headquarters. As soon as the defendant had been taken from the hotel, an FBI agent obtained consent from the hotel management to search the hotel room that the defendant had just vacated. Id. at 225. Among other things, the FBI agent seized the contents of the wastepaper basket into which defendant had put some items. Id.

The defendant in Abel moved to suppress the evidence found as a result of these searches, including the items that the FBI agent found in the wastepaper basket. Id. at 218. The district court denied his motion to suppress, and the Second Circuit affirmed. Id. The Supreme Court concluded that it was lawful for the FBI agent to seize the entire contents of the

The Honorable Richard J. Sullivan
October 25, 2007
Page 8

wastepaper basket, because the defendant had abandoned all the items that he left therein:

> So far as the record shows, petitioner had abandoned these articles. He had thrown them away. So far as he was concerned, they were bona vacantia. There can be nothing unlawful in the Government's appropriation of such abandoned property.

Id. at 241.

Arguably, the leading case in the Second Circuit on abandonment in the search and seizure context is Levasseur, 816 F.2d at 37. In Levasseur, the defendants, who were affiliated with an underground terrorist organization, were suspected of a variety of crimes for which the underground organization took credit. Id. at 39. The FBI had been searching for the defendants for many years. When the FBI arrested some other members of the organization, they discovered that at least one of the members who had been arrested had been able to warn defendants of their probable arrests. Id. at 40-41. FBI agents went to defendants' house in order to arrest them, and found the house empty. Id. Acting on the belief that defendants had fled and did not intend to return to their home, the FBI conducted a warrantless search of defendants' house. Id. The agents conducting the search discovered a locked footlocker therein, which they opened and searched. Id. The defendants' motion to suppress the evidence found inside the footlocker was denied. Id. at 42. The district court found the search lawful because the property had been abandoned by the defendants. Id. The Second Circuit agreed, holding that this search was not a violation of the Fourth Amendment because the defendants "had forfeited their reasonable expectation of privacy by abandoning their . . . house prior to the warrantless search of the footlocker." Id. at 44. The finding of abandonment was supported by the FBI agents' objectively reasonable belief at the time of the search that defendants had fled from the authorities and did not intend to return to their home. See id. at 41-42.

In United States v. Hayes, 120 F.3d 739 (8th Cir. 1997), the Eighth Circuit addressed the issue of whether the district court had erred by determining that the defendant had

The Honorable Richard J. Sullivan
October 25, 2007
Page 9

abandoned a bag of clothing left in a friend's car. See id. at 743. When the friend asked the defendant if she wanted the clothing, the defendant replied that she did not. Id. At 741. The friend later consented to a search of her car, during which law enforcement officers seized the clothing. Id. The district court concluded that, because the defendant abandoned the clothing, she lacked standing to challenge its unlawful seizure. See id. The court of appeals affirmed, stating that "[The defendant] offered no facts to indicate that she retained any expectation of privacy in the item seized, and absent a legitimate expectation of privacy, [the defendant] had no standing to challenge the seizure of the clothing." Id.

Here, at the time of the officers' search of the safe, the officers had reason to believe that the defendant had no intention to return to his wife's home to retrieve either the safe or its contents -- i.e., that the safe had been abandoned.[1] In April 2006, the defendant was thrown out of the apartment at 1 West 126th Street, Apt. 6F, New York, New York (the "Apartment"), which he shared with Ms. Scriven. (Affirmation of Margaret Scriven dated September 20, 2007 ("Scriven Aff.") ¶ 2(a) (attached hereto as Exhibit C); Affirmation of Ronald Perkins dated October 24, 2007 ("Perkins Aff.") ¶ 5(c) (attached hereto as Exhibit D).) The defendant was thrown out of the Apartment because Ms. Scriven learned that the defendant had been sexually abusing her daughter Maya. (Perkins Aff. ¶ 5(d).) After April 2006, with the exception of a single call in July 2006, Ms. Scriven only talked to the defendant about his coming back to the Apartment to pick up his belongings. (Scriven Aff. ¶ 2(b).) Beginning in April, she called the defendant "numerous times on his home and cell phones, and told him to come to [her] Apartment to pick up his belongings." (Scriven Aff. ¶ 2(c).)

Between April 2006 and July 2006, the defendant made approximately four to five trips to the Apartment in order to retrieve his personal belongings, including his television, some electronics, two computers, his mail, and some clothing. (Scriven ¶ 2(d).) The last time the defendant went to the Apartment to retrieve his belongings was in July 2006. (Scriven

---

[1] Ms. Scriven and the defendant are separated, and Ms. Scriven is the process of getting a legal divorce or annulment.

The Honorable Richard J. Sullivan
October 25, 2007
Page 10

Aff. ¶¶ 2(d) & (e).) As a result, in September 2006, Ms. Scrivin (again) "called the defendant several times on his home and cell phones, and again told him to pick up the rest of his belongings." (Scriven Aff. ¶ 2(e).) And, in September or October 2006, she sent the defendant a certified letter informing the defendant that the rest of his belongings would be thrown out if he did not pick them up. (Scriven Aff. ¶ 2(g).) The defendant never did so. In October 2006, after the defendant received paperwork from the New York City Administration for Children's Service's relating to the defendant's abuse of Ms. Scriven's daughter, the defendant and Ms. Scriven talked on the telephone; Ms. Scriven (again) told the defendant to come and pick up the rest of his belongings. (Scriven Aff. ¶ 2(h).) Again, the defendant never came. One item the defendant never retrieved, despite months of reminders and urging, was the safe at issue. (Scriven Aff. ¶ 2(j).) The last time the defendant talked with Ms. Scriven was in October 2006. (Perkins Aff. ¶ 5(f).) Prior to the officers meeting with Ms. Scriven on January 25, 2007, Ms. Scriven was in the process of throwing out the defendant's remaining belongings that she no longer wanted and that the defendant had left behind in the Apartment, including some paperwork, a computer hard drive, and a safe. (Perkins Aff. ¶ 5(g).)

The defendant manifested an a clear intent to abandon the safe, which intent was made known to the officers. He had ample notice that any items he left behind in the Apartment would be discarded by Ms. Scriven. Ms. Scriven reminded the defendant time-and-again to come and get his belongings after she threw him out of the Apartment in April 2006. (Scriven Aff. ¶ 2.) Indeed, the <u>only</u> reason for Ms. Scriven's calls and the only topic of conversation with the defendant related to his retrieval of his belongings. (Scriven Aff. ¶ 2(b).) The defendant did not heed Ms. Scriven's requests, and went to the Apartment four or five times to retrieve other items such as his computers, mail, television, and some clothing. But he was selective, and only took some of his belongings. One of the items he never picked up his safe. (Scriven Aff. ¶ 2(d); Perkins Aff. ¶ 5(f).) For over eight months, the defendant was continually reminded that he had left items behind at the Apartment and that he should get them or they would be thrown out. (Scriven Aff. ¶ 2(a)-(g).) The last trip the defendant made to the Apartment to retrieve any item was in July 2006 -- approximately six months before the Ardsely

The Honorable Richard J. Sullivan
October 25, 2007
Page 11

Police opened up the safe. (Scriven Aff. ¶ 2(e).)  The last time they talked was in October 2006, almost three months' before the officers' opening of the safe.  (Perkins Aff. ¶ 5(2).)

  The defendant knew that Ms. Scriven wanted the defendant's belongings out of the Apartment, and that she intended to dispose of any piece of property he left behind at the Apartment.  (Scriven Aff. ¶ 2(g).)  Given the passage of time (i.e., at least six months), ample notice of Ms. Scriven's intention to throw out his belongings (i.e., numerous phone calls and a certified letter), and the defendant's own actions (i.e., numerous trips to retrieve items other than the safe), the defendant cannot claim that he retained any legitimate expectation of privacy in the items he left behind at the Apartment, including the safe.  See Abel, 362 U.S. at 241; Levasseur, 816 F.2d at 41-42; Hayes, 120 F.3d at 741; see also United States v. Lehder-Rivas, 955 F.2d 1510, 1522 (11th Cir. 1992) (finding defendant lacked standing to challenge the warrantless search of a locked suitcase that he had left in the charge of an acquaintance for a year's time and failed to reclaim, despite promises to do so).  The same was apparent to the police when the talked to Ms. Scriven on January 25, 2007.  (Perkins Aff. ¶ 5(g) ("She was, as of January 25, 2007, in the process of throwing out the defendant's remaining belongings that she no longer wanted, including some paperwork, a computer hard drive, and a safe."); (id. ¶ 5(f) ("She has not talked to the defendant since in or about October 2006.").)

  Accordingly, the defendant has identified no fact supporting the conclusion that he had any reasonable expectation of privacy in the safe or its contents, or that this expectation was known, or could have been known, to the police.

  2. **The Defendant's Ownership of the Safe Does Not Resolve the Issue**

  The defendant's statement that he owned the safe and expected its contents would remain private does not defeat the officers' reasonable conclusion that he had abandoned the safe.  (Davis Decl. ¶ 3.)  Ownership or possession of an object does not per se establish a legitimate privacy interest.  See Rawlings, 448 U.S. at 104 ("Ownership of the searched item, though a fact to be considered, is neither in itself sufficient to establish a

The Honorable Richard J. Sullivan
October 25, 2007
Page 12

legitimate expectation nor a substitute if the requisite legitimate expectation of privacy is lacking."); Gudema v. Nassau County, 163 F.3d 717, 722 (2d Cir. 1998) ("Mere ownership of property does not establish a legitimate expectation of privacy unless the owner vigilantly protects the right to exclude others."); United States v. Torres, 949 F.2d 606 (2d Cir. 1991) (same).

In Torres, for example, the Second Circuit considered whether a defendant had standing to assert a protected privacy interest in her shoulder bag. Torres was questioned by law enforcement agents after getting off an overnight bus, which was known to be a means of transporting illegal drugs. The agents asked Torres, who was carrying a shoulder bag, whether she was carrying narcotics. Id. at 607. Torres repeatedly denied ownership of the shoulder bag, disclaimed knowledge of its contents, and expressed indifference about the exclusion of others when asked to consent to a search of the bag. Id. at 608. The agents searched the bag and discovered heroin, which Torres later moved to suppress. See id. The Court concluded that Torres lacked standing to challenge the search, noting that "an otherwise legitimate privacy interest may be lost by disclaiming or abandoning property." Id. at 608.

Here, while the defendant may be the true owner of the safe at issue, he took no steps (over a ten month period of time) supporting his intention to keep the contents of the safe private. His lack of intent is all the more true given Ms. Scriven's repeated (and unheeded) reminders to him. An no facts supporting the defendant's intent to keep the safe and its contents private were available or known to the police officers at the time they were provided the safe and at the time they opened it. (Perkins Aff. ¶¶ 5(f)-(i).) Thus, the defendant's possessory interest in the safe and its contents is only one factor relevant to this Court's determination of whether the defendant manifested any objective intention to retain a legitimate expectation of privacy.

Moreover the defendant's conduct, when viewed in light of the totality of the circumstances, is analogous to his throwing the safe away into the garbage. See California v. Greenwood, 486 U.S. 35, 40-42 (1988) (holding that a warrantless search of sealed opaque trash bags that defendant put outdoors is

The Honorable Richard J. Sullivan
October 25, 2007
Page 13

constitutionally permissible). In <u>Greenwood</u>, the Supreme Court noted that "the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public." <u>Id.</u> at 40. Here, though the safe was not actually thrown away, the defendant was on notice that his wife planned to do so for many months; and the defendant's wife was actually about to discard his remaining possessions. (Perkins Aff. ¶ 5(g) ("She was, as of January 25, 2007, in the process of throwing out the defendant's remaining belongings that she no longer wanted, including some paperwork, a computer hard drive, and a safe."); (<u>id.</u> ¶ 5(f) ("She has not talked to the defendant since in or about October 2006.").) It was only at the urging of the Ardsley Police Department (in connection with their investigation into the defendant's kidnapping and rape of a young girl (<u>see</u> attached indictment)) that Ms. Scriven refrained from any further discarding of the defendant's belongings. (Perkins Aff. ¶ 5(j).)

\* \* \*

Based on a review of the totality of the objective facts and circumstances considered by the officers of the Ardsely Police Department who conducted the warrantless search of the defendant's safe, this Court should conclude that the defendant abandoned any reasonable expectation of privacy in that safe, and (consequently) that the defendant lacks standing to challenge the police's warrantless search of that safe.

The Honorable Richard J. Sullivan
October 25, 2007
Page 14

## Conclusion

    For the foregoing reasons, the defendant abandoned any legitimate expectation of privacy in the safe, and therefore lacks standing to challenge its warrantless search.

                                      Respectfully submitted,

                                      MICHAEL J. GARCIA
                                    United States Attorney

                By: _____
                         Benjamin A. Naftalis
                         Assistant United States Attorney
                         Tel. No. (212) 637-2456

cc:  Steven Statsinger, Esq. (by hand)