UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

           - v. -                 :          S2 07 Cr. 468 (RJS)

WILLIAM DAVIS,                    :
  a/k/a "Dutch,"

                                  :

           Defendant.

                                  :
- - - - - - - - - - - - - - - - x

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR A NEW TRIAL

LEV L. DASSIN
Acting United States Attorney,
Southern District of New York

AIMEE HECTOR
GLEN G. MCGORTY
Assistant United States Attorneys
     - Of Counsel -

# Table of Contents

BACKGROUND

I.   Procedural History . . . . . . . . . . . . . . . . . .   4

II.  The Proof at Trial . . . . . . . . . . . . . . . . . .   5

ARGUMENT

I.   Applicable Law Regarding Post-Trial Motions . . . . . .   12

    A.   Rule 29 . . . . . . . . . . . . . . . . . . . . .   12

    B.   Rule 33 . . . . . . . . . . . . . . . . . . . . .   14

II.  Discussion . . . . . . . . . . . . . . . . . . . . . .   5

    A.   The Evidence Was Sufficient to Sustain Convictions   16

    B.   The Defendant's Challenge to the Credibility of
        Margaret Scriven is Inaccurate and Does Not Warrant
        a New Trial . . . . . . . . . . . . . . . . . . .   18

    C.   The Court's 414 Ruling Did Not Substantially
        Prejudice Defendant's Right to a Fair Trial . . . .   20

    D.   The Defendant's Challenge to the Court's
        Instructions Regarding Count Three Is Meritless . .   25

III. Conclusion . . . . . . . . . . . . . . . . . . . . . .   28

The Government respectfully submits this memorandum of law in opposition to defendant's motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or, in the alternative, for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Measured against the heavy burden that the defendant must bear in order for his claims to succeed, his motion falls far short. For the reasons set forth below, defendant's motion should be denied in all respects.

## BACKGROUND

William Davis was convicted after trial by a jury of: (1) possessing child pornography that had been transported in interstate commerce, in violation of Title 18, United States Code, Section 2252A(a)(5)(B); (2) possessing ammunition after having been previously convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1); (3) producing child pornography in violation of Title 18, United States Code, Section 2251; and (4) attempting to mail child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(1) and (b)(1).

Defendant now moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure ("FRCP") 29, or, in the alternative, for a new trial pursuant to FRCP 33. Defendant argues that the jury's verdict was not supported by sufficient evidence, and that alleged errors in the admission of the

defendant's prior conviction for Sodomy in the First Degree pursuant to Federal Rule of Evidence 414 and in the Court's instructions regarding the legal requirements under 18 U.S.C. § 2251 require the entry of judgments of acquittal and/or an order for a new trial.  As set forth in detail below, each of the defendant's arguments is without merit and the motion should be denied in all respects.

## I.   Procedural History

Indictment S1 07 Cr. 468 (RJS) was filed on December 22, 2008, in four counts.  Counts One and Two, which related to items found in the defendant's safe, charged Davis with possession of child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and possession of ammunition after having previously been convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1).  Counts Three and Four, which related to pictures of the defendant's step-daughter found in his room at the Ardsely Acres Motel, charged Davis with production of child pornography in violation of Title 18, United States Code, Section 2251,  and attempted mailing of child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(1) and (b)(1).  Trial commenced on January 5, 2009, and ended on January 13, 2009, when the defendant was convicted on all four counts.

## II.  The Proof at Trial

The Government established at trial that the defendant knowingly produced images of child pornography of his step-daughter and attempted to mail those images.  The Government also established that the defendant knowingly possessed CDs containing additional images of child pornography as well as five rounds of ammunition in his safe.  The defendant was not permitted to possess ammunition because he had previously been convicted of a felony punishable by imprisonment for a term exceeding one year, namely, conviction on or about May 14, 1991, in New York Supreme Court, New York County, for sodomy in the first degree, a Class B felony, Penal Law 130.50.

The Government presented the testimony of eight witnesses: Detective Steven Koehler of the Westchester Police Department Crime Scene Investigations Squad, who described the search of the defendant's hotel room at the Ardsley Acres Motel and the recovery of the defendant's backpack (wherein the pictures of the defendant's stepdaughter were found); Detective John Sheeley of the Ardsley Police Department, who discovered the pictures of the defendant's stepdaughter inside the backpack and also recovered the defendant's safe from his wife's apartment (wherein the CDs of child pornography and ammunition were found); Alcohol Tobacco and Firearms Special Agent Keith Prill, who provided expert testimony regarding the origin and manufacture of the ammunition;

Federal Bureau of Investigation Special Agent Sean Watson, who testified concerning the contents of the CDs; FBI Supervisory Special Agent Henry Scot Huntsberry and Florida Department of Law Enforcement Special Agent Michael Duffey, both of whom testified regarding the interstate nexus of some of the images of child pornography on the CDs; Information Technology Specialist Forensic Examiner of the FBI Computer Analyst Response Team Stephen Flately, who provided expert testimony regarding the origin of particular images of child pornography on the CDs; and Margaret Scriven, the defendant's estranged wife who testified concerning her knowledge of the safe, its contents, and the pictures of her daughter.

The testimony adduced at trial demonstrated that on or about January 5, 2007, officers from the Westchester Police Department conducted a search of the defendant's motel room at the Ardsley Acres Motel in Westchester, New York, pursuant to a search warrant. (1/6/09 Tr. 69:21-23). Detective Koehler seized a backpack from inside the defendant's motel room, (1/6/09 Tr. 75:21-76:6), which was later opened by Detective Sheeley, (1/7/09 Tr. 102:23-25). The defendant admitted that the backpack belonged to him, (1/8/09 Tr. 362:14-22), an admission which was corroborated by numerous items of physical evidence contained therein, including the defendant's birth certificate, business cards, and letters addressed to him, (1/7/09 Tr. 103:19-106:15).

6

Detective Sheeley testified that he found, <u>inter alia</u>, six sealed envelopes and a sheet of stamps in the front compartment of the backpack.  (1/7/09 Tr. 108:4-111:25).   The envelopes were not addressed, but each was affixed with a return address label which read: Margaret Scriven, 1 West 126th Street, New York, New York 10026, 6F.  Inside each envelope was a photograph of a young girl, identified by Ms. Scriven as the defendant's stepdaughter, approximately four years of age, lying on a bed with her legs spread, exposing her vagina.  Each envelope also contained a typewritten note, which stated: "DO ME A FAVOR IF I NEED YOU, SAY THAT DUTCH SENT YOU THIS......NO QUESTIONS."  (1/7/09 Tr. 108:4-111:25).

Detective Sheeley also testified that on or about January 25, 2007, he and his partner, Detective Ronald Perkins, went to the home of the defendant's wife, Margaret Scriven, in Manhattan. (1/7/09 Tr. 113:23-114:9).  Detectives Sheeley and Perkins seized a locked safe from inside a closet in the apartment, which the defendant's wife identified as belonging to the defendant. (1/7/09 Tr. 115:15-20).  The defendant also admitted that the safe belonged to him.  (1/8/09 Tr. 361:24-362:1).  Upon opening the safe, Detective Sheeley discovered, <u>inter alia</u>, 30 CDs (GX 22A-DD) contained within a CD case (GX 22) and five pieces of Hirtenberger Patronen 9 millimeter ammunition (GX 26). (1/7/09 Tr. 120:4-14; 127:10-127:21; 128:5-130:3).

Special Agent Prill testified regarding his examination of the ammunition found within the defendant's safe.  According to Special Agent Prill, who was qualified as an expert in identification of the manufacturing and origin of ammunition, the five pieces of ammunition were manufactured by Hirtenberger Patronen in Austria and Hungary, and thus traveled in interstate commerce.  (1/7/09 Tr. 156:21-158:5)

Special Agent Watson testified regarding his examination of the CDs recovered from the safe.  According to Agent Watson, the 30 CDs contained over 200 images of child pornography and over 3,000 images of child erotica. (1/7/09 Tr. 231:13-17).  Several individual images, including Government Exhibits 31A-P, were admitted into evidence and a subset were published to the jury. (1/7/09 Tr. 235:15; 237:24-238:21).  Agent Watson testified that one of the images, Government Exhibit 31I, depicted a website that had been downloaded from the internet onto one of the CDs. (1/7/09 Tr. 238:24-239:21).

Agent Watson also testified specifically about GX 22F, one of the CDs found in the safe. Using GX 33, a screenshot image of the contents of GX 22F, Agent Watson described the various contents of this CD, which included folders of personal pictures of the defendant, the defendant's mother's wedding, and a trip the defendant took to Jamaica, along with an image of three young girls' heads surrounding an adult male penis entitled

8

"stuckup2.bmp."   (1/7/09 Tr. 240:10-245:24).

Two additional witnesses testified regarding the images found on the CDs.  Agents Huntsberry and Duffey both testified regarding their own investigations of the child victims portrayed in the images.  Agent Duffey explained to the jury that he was involved in the investigation of the child victim portrayed in images marked GX 31O and 31P, both of which were found on the defendant's CDs.  (1/7/09 Tr. 260:20-261:7).  Agent Duffey further testified that he had met the child in the pictures, who is currently 11 or 12 years old, and that he recognized the location that the pictures were taken in central Florida. (1/7/09 Tr. 262:4-263:6).  Agent Huntsberry testified regarding his investigation concerning the child victim portrayed in images marked GX 31K and 31M, both of which were also contained on the defendant's CDs.  Agent Huntberry stated that he had met the victim, who was approximately five or six years old at the time the pictures were taken, and that he had been to the house where the pictures were taken in Cary, North Carolina.  (1/7/09 Tr. 267:16-270:19).

Stephen Flately testified as an expert in computer forensic examination of CDs.  (1/12/09 Tr. 397:17-22).  Mr. Flately explained that when an image is downloaded from a Windows-based computer, the computer creates a database called the "thumbs database," which contains certain information relating to each of

the images downloaded, including the name of the file, the date
and time it was created, and the path, or address, of the file on
the original hard disk.  (1/12/09 Tr. 396:5-397:10).  Mr. Flately
reviewed the thumbs database for the CDs found in the defendant's
safe.  With respect to Disk 17, GX 22Q, Mr. Flately testified
that the images located on the CD were originally located at
D:Documents and Settings/William Davis/ My Documents/My
Pictures/tight.  (1/12/09 Tr. 405:23-406:20).  Mr. Flately
further testified that the location "William Davis" signified the
user name that was supplied to the computer at the time the
computer was originally set up.  (1/12/09 Tr. 406:21-24).  Mr.
Flately testified that several of the pornographic images
previously admitted into evidence, such as GX 31A, 31L, and 31P,
were downloaded from that location on March 28, 2005.  (1/12/09
Tr. 407:12-410:12).  From his review of the 30 CDs found in the
safe, Mr. Flately testified that the images were all burned
between September 2004 and March 2005.  (1/12/09 Tr. 411:16-17).

Margaret Scriven, the defendant's estranged wife, testified
that the defendant moved into her apartment at 1 West 126th
Street in July 2005, shortly after they got married.  (1/7/09 Tr.
166:8-9).  She shared the apartment with her daughter from a
previous relationship, Maya.  (1/7/09 Tr. 165:13-17).  Margaret
emptied a closet in the hallway of her apartment for the
defendant's belongings.  (1/7/09 Tr. 167: 18-19).  Several months

10

after the defendant moved into the apartment, Ms. Scriven

suspected him of molesting Maya. (1/7/09 Tr. 173:16-18).  As a

result of those suspicions, she asked the defendant to move out

of the apartment.  (1/7/09 Tr. 174:7-8).  Ms. Scriven also

initiated a police investigation of the defendant's alleged

molestation of Maya by filing a police report and contacting the

Administration for Children's Services.  (1/7/09 Tr. 175: 3-14).

Ms. Scriven testified that, as she was cleaning out the remainder

of the defendant's belongings after he had left the apartment,

she found his safe at the back of his closet.  (1/7/09 Tr. 177:

21-23).  She had not seen the safe before finding it in the

closet and did not know the combination.  (1/7/09 Tr. 178:6-11).

Thereafter, she contacted the Ardsley Police Department and

Detectives Sheeley and Perkins came to retrieve the safe.

(1/7/09 Tr. 179:5-8).

     Ms. Scriven also testified regarding the contents of the

safe, which were shown to her at trial.  She stated that none of

the items belonged to her, but that she did recognize the

handwriting on the CDs marked GX 22A-DD as belonging to the

defendant.  (1/7/09 Tr. 182:17-184:9).

     Finally, Ms. Scriven was shown the envelopes that were

recovered from the defendant's backpack.  Ms. Scriven testified

that she had never seen the envelopes or their contents prior to

being shown them by the United States Attorney's Office; that the

return address on the outside of the envelope was incorrect as it was not her actual zip code; that she did not take the picture; and that she had never seen the note inside and did not write it herself. (1/7/09 Tr. 192: 11-194:24). Ms. Scriven further testified that she recognized the young girl in the picture as her daughter, Maya, and that she recognized the bedding on which Maya is lying as the bedding that the defendant purchased for the couple's bed in the Winter of 2006. (1/7/09 Tr. 193:12-194:9).

The parties also presented a joint stipulation that William Davis was convicted upon a plea of guilty on or about May 14, 1991, in New York Supreme Court, New York County, of Sodomy in the First degree, a Class B felony, a crime punishable by imprisonment for a term exceeding one year, in violation of New York Penal Law 130.50. The victim was a child below the age of 14. (1/7/09 Tr. 279:5-11).

## ARGUMENT

I.   Applicable Law Regarding Post-Trial Motions

A.   Rule 29

A defendant challenging the sufficiency of the evidence pursuant to Rule 29 "bears a heavy burden." United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003) (quoting United States v. Finley, 245 F.3d 199, 202 (2d Cir. 2001)); United States v. Si Lu Tian, 339 F.3d 143, 150 (2d Cir. 2003). A jury's verdict must be upheld if "any rational trier of fact could have found the

12

essential elements of the crime beyond a reasonable doubt."
Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in
original); see also United States v. Glenn, 312 F.3d 58, 63 (2d
Cir. 2002); United States v. Payton, 159 F.3d 49, 55-56 (2d Cir.
1998).  "In other words, the court may enter a judgment of
acquittal only if the evidence that the defendant committed the
crime is nonexistent or so meager that no reasonable jury could
find guilt beyond a reasonable doubt." United States v. Guadagna,
183 F.3d 122, 130 (2d Cir. 1999) (internal citation and quotation
omitted).

In considering a Rule 29 motion, the Court should "review
all of the evidence presented at trial in the light most
favorable to the government, crediting every inference that the
jury might have drawn in favor of the government." United States
v. Walker, 191 F.3d 326, 333 (2d Cir. 1999) (internal quotation
marks omitted); accord United States v. Martinez, 54 F.3d 1040,
1042 (2d Cir. 1995).  Even where "either of the two results, a
reasonable doubt or no reasonable doubt, is fairly possible, [the
Court] must let the jury decide the matter." United States v.
Autuori, 212 F.3d 105, 114 (2d Cir. 2000) (internal quotation
marks omitted).  Thus, the task of choosing among the permissible
competing inferences that can be drawn from the evidence is for
the jury, not for the reviewing court. See, e.g., Jackson, 335
F.3d at 180 ("courts must be careful to avoid usurping the role

13

of the jury when confronted with a motion for acquittal") (citing
Guadagna, 183 F.3d at 129 ("Rule 29(c) does not provide the trial
court with an opportunity to substitute its own determination of
. . . the weight of the evidence and the reasonable inferences to
be drawn for that of the jury.")); United States v. Matthews, 20
F.3d 538, 548 (2d Cir. 1994) (stating that Court must affirm
conviction "so long as, from the inferences reasonably drawn from
the record as a whole, the jury might fairly have concluded that
the defendant was guilty beyond a reasonable doubt").

"The fact that a trier of fact has declined to draw one of
two or more competing inferences does not mean that the
inferences drawn were not available or were not reasonable."
United States v. Rosa, 17 F.3d 1531, 1542 (2d Cir. 1994); see
also United States v. Plitman, 194 F.3d 59, 67 (2d Cir. 1999)
("Even if there had been evidence regarding these [defense]
theories in the record, the jury was free to reject it").
Accordingly, "the government need not 'exclude every reasonable
hypothesis other than that of guilt.'" Guadagna, 183 F.3d at 130
(quoting Holland v. United States, 348 U.S. 121, 139 (1954)); see
Martinez, 54 F.3d at 1042 ("[I]t is the task of the jury, not the
Court, to choose among competing inferences.").

B.   Rule 33

The district court "may grant a new trial to [a] defendant
if the interests of justice so require."  Fed. R. Crim. P. 33.

Because "motions for a new trial are disfavored in the Second Circuit," United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995), a district court, after examining the totality of the evidence and considering objectively all of the facts and circumstances, should grant the motion only if the court finds "a real concern that an innocent person may have been convicted." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992).  In short, "[i]t is only when it appears that an injustice has been done that there is a need for a new trial 'in the interests of justice.'" Id.

The district court must strike a balance between weighing the evidence and credibility of witnesses and not "wholly usurp[ing]" the role of the jury. Autuori, 212 F.3d at 120. Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, "[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." Sanchez, 969 F.2d at 1414.

The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice.  See Sanchez, 969 F.2d at 1414 (trial court must be satisfied that "competent, satisfactory and sufficient evidence" in the record supports the jury verdict).  The district court must examine the entire case, take into account all facts and circumstances, and

15

make an objective evaluation.  Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority "sparingly" and in "the most extraordinary circumstances."  Id.

## II.  Discussion

### A.   The Evidence Was Sufficient to Sustain Convictions.

The defendant argues that there was insufficient evidence as to all counts because "there was no forensic evidence, (i.e. fingerprints or DNA evidence), and/or direct testimony linking the defendant to CDs recovered or and [sic] the picture of his step-daughter Maya."  (Def.'s Mot. at 3).

With respect to the CDs, any rational juror could have found, on the evidence presented at trial and described above, that the defendant possessed the CDs containing images of child pornography.  First, the defendant admitted that the safe belonged to him and that he kept things of value therein. Notably, the defendant also testified that at least some of the files contained on the CDs belonged to him.  (1/8/09 Tr. 357: 19-20 ("I know there's certain files on there that are mine.")). Further, the CDs were labeled in the defendant's handwriting and included personal pictures of the defendant, his vacations, and family events, along with images of child pornography.  Finally, the forensic computer analyst, Mr. Flately, was able to determine

16

that many of the pornographic images on the CDs were downloaded from a source location marked as "D:Documents and Settings/William Davis/ My Documents/My Pictures/tight." The term "William Davis" in the source address indicated that the computer's user identification was "William Davis." Mr. Flately also testified that the images of child pornography on the CDs were saved to the CDs between September 2004 and March 2005, long before the defendant married Ms. Scriven and moved into her apartment. On the basis of this evidence, the jury could reasonably conclude that the images belonged to the defendant.

There was similarly ample evidence from which a rational jury could conclude that the defendant produced the visual depiction of Maya. Notably, the pictures were found in the defendant's backpack in a hotel room where he was staying nearly nine months after he had moved out of Ms. Scriven's apartment and ceased to have access to Maya. Ms. Scriven testified that Maya appeared to be three to four years old in the photograph and was pictured lying on a bedspread that the defendant had purchased for their apartment while he was living there. Maya's approximate age range in the photograph was consistent with her age range during the period that the defendant was living at the apartment and had access to the child. Ms. Scriven further testified that the only people with access to the child alone during that time were her, her mother and the defendant.

Finally, as previously noted, the jury was presented with the fact of the defendant's prior conviction for Sodomy in the First Degree, from which evidence the jury was permitted, under law, to conclude that the defendant had a propensity or sexual appetite for children.  Accordingly, a rational jury could conclude that the defendant produced the visual depictions of Maya recovered from his backpack.

**B.    The Defendant's Challenge to the Credibility of Margaret Scriven is Inaccurate and Does Not Warrant a New Trial.**

Defendant argues that he is entitled to a new trial because Margaret Scriven's testimony that "she had seen the safe for [sic] which 30 or more CDs were recovered prior to its seizure at Mr. Davis' apartment prior to their marriage but did not see said safe the entire time of their marriage but for the day she was throwing out his belongings" was not credible.  (Def.'s Mem. at 4).  Specifically, the defendant posits that this testimony is not credible for three reasons: (1) Ms. Scriven emptied a closet in her apartment for the defendant's belongings; (2) according to the defendant, the jewelry inside the safe belonged to Ms. Scriven; and (3) according to the defendant, Detective Perkins testified that Ms. Scriven informed him that "she could not remember the combination of the safe."  (Def.'s Mem. at 4-5).  Defendant's argument must be rejected because it is inaccurate and not a proper basis for a new trial.

18

Rule 33 confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice. In exercising the discretion so conferred, the court is entitled to "weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." Sanchez, 969 F.2d at 1413 (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)).   Nonetheless, trial courts "must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." United States v. LeRoy, 687 F.2d 610, 616 (2d Cir. 1982), cert. denied, 459 U.S. 1174 (1983).  Only in "exceptional circumstances" may the trial judge "intrude upon the jury function of credibility assessment," Sanchez, 969 F.2d at 1414 (quoting United States v. Kuzniar, 881 F.2d 466, 470 (7th Cir. 1989)), such as "[w]here testimony is patently incredible or defies physical realities, " Sanchez, 969 F.2d at 1414.  Even so, "the trial judge's rejection of all or part of the testimony of a witness or witnesses does not automatically entitle a defendant to a new trial." Id.  Rather, the test is whether "it would be a manifest injustice to let the guilty verdict stand." Id. (quoting United States v. Reed, 875 F.2d 107, 114 (7th Cir. 1989)).

Ms. Scriven's testimony was neither contradictory nor incredible.  First, Ms. Scriven's assertion that she was not aware of the safe's existence is not contradicted by the fact

that Ms. Scriven emptied closet space for the defendant's belongings.   Second, Ms. Scriven clearly testified that none of the contents of the safe, including the jewelry found therein, belonged to her.   (1/7/09 Tr. 182:17-184:9).   The jury was entitled to accept Ms. Scriven's testimony even though it was contradicted by the defendant.   Third, regarding the combination of the safe, Detective Perkins testified that Ms. Scriven "didn't know it or didn't remember it."   (1/7/09 Tr. At 281:11-13).   This testimony is not inconsistent with Ms. Scriven's testimony that she didn't know the combination.   Moreover, even if the defendant were able to identify internal inconsistencies in the testimony of Ms. Scriven or between Ms. Scriven and other witnesses, such insignificant discrepancies or differences in recollection are an insufficient basis for disturbing the jury's evaluations of credibility.   See Sanchez, 969 F.2d at 1415.

## C. The Court's 414 Ruling Did Not Substantially Prejudice Defendant's Right to a Fair Trial.

The defendant argues that the admission of his 1991 conviction for Sodomy in the First Degree violated his "constitutional 5[th] Amendment right to a fair trial" because of "its prejudicial effect and remoteness in time."   (Def.'s Mot. at 5).   Defendant's claim is meritless.   For the reasons recited in the Government's letter dated December 5, 2008, which is incorporated by reference herein, evidence of the defendant's prior conviction for Sodomy in the First Degree was properly

admitted pursuant to Federal Rule of Evidence 414 and not unduly prejudicial.

By letter dated December 5, 2008, the Government moved _in limine_ pursuant to Federal Rules of Evidence 414 and 404(b) to admit evidence of the defendant's two prior convictions for child molestation offenses: (1) defendant's conviction upon a plea of guilty on April 22, 1991 for Sodomy, Intercourse with Forcible Compulsion, in violation of New York Penal Law 130.5; and (2) defendant's conviction on August 10, 2007, following a trial, for: Predatory Sex Assault Against a Child Under 13 Years of Age, in violation of New York Penal Law 130.96; Predatory Sex Assault by an Individual Previously Convicted for Sex Offense, in violation of New York Penal Law 130.95, Kidnapping in the Second Degree, in violation of Penal Law 135.20; Sexual Abuse in the First Degree, in violation of New York Penal Law 135.65; Criminal Impersonation of a Police Officer, in violation of New York Penal Law 190.62; Sexual Abuse in the Second Degree, in violation of New York Penal Law 130.60, and; Act in Manner to Injure a Child Less than 17, in violation of New York Penal Law 260.10.

The Court denied the Government's motion with respect to the 2007 conviction and granted the Government's motion with respect to the 1991 conviction. In so holding, the Court found that the 2007 conviction, while relevant under Rule 414, should be excluded as unduly prejudicial under Rule 403. In contrast, the

Court found that the 1991 conviction was relevant under Rule 414 and not unduly prejudicial.  In support of this distinction, the Court noted that the 1991 charges were less inflammatory than those in 2007, and therefore less likely to distract the jury from consideration of the conviction for its permissible purpose under Rule 414, that is, to demonstrate a sexual propensity or proclivity toward children.  Furthermore, the Court found that the 1991 conviction was directly relevant to the instant charges, as it informed Ms. Scriven's suspicions concerning the defendant's inappropriate conduct toward her daughter and her decision to alert the authorities, thus providing the motivation for the defendant's attempted mailing of the pornographic pictures of Ms. Scriven's daughter.  (1/5/09 Tr. 15:24-18).

The Court's 403 analysis was well-supported and consistent with case law.  Because showing propensity is a legitimate theory of relevance under Rule 414, the tendency of evidence within the scope of the Rule to show a disposition of the defendant that could lead to the commission of a charged crime falls on the "probative value" side of the Rule 403 balance and weighs in favor of admission – not exclusion.  As explained by the legislative sponsors:

> The new rules will supersede in sex offense cases the
> restrictive aspects of Federal rule of evidence 404(b) . . .
> .  In other respects, the general standards of the rules of
> evidence will continue to apply, including the restrictions
> on hearsay evidence and the court's authority under evidence
> rule 403 to exclude evidence whose probative value is

22

> substantially outweighed by its prejudicial effect . . . .
> The practical effect . . . is to put evidence of uncharged
> offenses in sexual assault and child molestation cases on
> the same footing as other types of relevant evidence that
> are not subject to a special exclusionary rule.  The
> presumption is in favor of admission.  The underlying
> legislative judgment is that the evidence admissible
> pursuant to the proposed rules is typically relevant and
> probative, and that its probative value is normally not
> outweighed by any risk of prejudice or other adverse
> effects.

140 Cong. Rec. H8991-92.

The effect is that admission is the norm, and exclusion exceptional, as with other forms of relevant evidence that the Rules of Evidence do not specially restrict. See 140 Cong. Rec. S12990; David J. Karp, Evidence of Propensity and Probability in Sex Offense Cases and Other Cases, 70 Chi.-Kent. L. Rev. 15, 19 (1994); United States v. Enjady, 134 F.3d 1427, 1431, 1433 (10th Cir. 1998) ("Rule 413's presumption in favor of admission" is constitutional and "Rule 403 should be used infrequently, reflecting Congress' legislative judgment that the evidence 'normally' should be admitted"); id. at 1434 ("the district court must recognize the congressional judgment that Rule 413 evidence is 'normally' to be admitted"); United States v. Meacham, 115 F.3d 1488, 1492 (10th Cir. 1997) ("Rule 403 balancing is still applicable . . . but clearly under Rule 414 the courts are to 'liberally' admit evidence of prior uncharged sex offenses"); see also United States v. McHorse, 179 F.3d 889, 898-99 (10th Cir. 1999) (quoting Meacham and Enjady); United States v. Mann, 193

23

F.3d 1172, 1173 (10th Cir. 1999) (quoting Meacham); United States
v. Guardia, 135 F.3d 1326, 1331 (10th Cir. 1998) ("Rule 413, like
all other rules of admissibility, favors the introduction of
evidence . . . 'The presumption is in favor of admission.'")
(quoting legislative sponsor); United States v. Mound, 149 F.3d
799, 802 (8th Cir. 1998) (applying underlying legislative
judgment that probative value of Rule 413 evidence "is normally
not outweighed by any risk of prejudice or other adverse
effects"); United States v. Sumner, 119 F.3d 658, 662 (8th Cir.
1997) (quoting legislative sponsor concerning presumption in
favor of admission); United States v. Larson, 112 F.3d 600, 604
(2d Cir. 1997) (similar); United States v. Wright, 53 M. J. 476,
480, 482-83 (Ct. App. Armed Forces 2000) (quoting legislative
sponsor and author concerning presumption in favor of admission
and stating that Rule 403 balancing should be applied in light of
strong legislative judgment that evidence of prior sexual
offenses should ordinarily be admissible).  In fact, another
court sitting in this District recently admitted evidence of a
defendant's prior sexual conduct with children pursuant to Rule
414, finding that such evidence, while certainly prejudicial,
"was not unfairly prejudicial, as this was conduct that [the
defendant] chose to engage in, and this was evidence that showed,
convincingly, that [the defendant] had a sexual interest in
children and the intent and desire to commit the charged crimes."

<u>United States</u> v. <u>Levy</u>, 2009 U.S. District LEXIS 7801, at * 30
(S.D.N.Y. Jan. 27, 2009).  Accordingly, the Court's finding that
the probative value of the defendant's 1991 conviction was not
outweighed by the risk of unfair prejudice was entirely proper.

Furthermore, defendant's suggestion that the 1991 conviction
should have been excluded because of "remoteness in time" is
similarly unavailing.  The Second Circuit has noted that "the
legislative history of Rule 414 reveals that Congress meant its
temporal scope to be broad, allowing the court to admit evidence
of Rule 414 acts that occurred more than 20 years before trial."
<u>Larson</u>, 112 F.3d at 605.

### D.   The Defendant's Challenge to the Court's Instructions Regarding Count Three Is Meritless.

On January 13, 2009, the jury posed the following question
to the Court regarding Count Three, production of child
pornography:

> Does Section 2251 require that the perpetrator knows or
> has reason to know that the visual depiction will be
> transported in interstate commerce or mailed at the
> moment the picture is produced or can the knowledge
> come about at some later point?

In response, the Court instructed:

> I instruct you that the defendant did not have to know
> or have reason to know that the visual depiction at
> issue would be transported in interstate or foreign
> commerce or mailed at the moment the visual depiction
> was produced.  Rather, it is sufficient if you find
> beyond a reasonable doubt that the defendant knew or
> had reason to know that the visual depiction at issue
> would be transported in interstate or foreign commerce
> or mailed at any time prior to January 4, 2007, the

25

date on which the visual depiction was recovered by law
enforcement authorities.

(1/13/09 Tr. at 565:5-14).

The Court's statutory construction is supported by the text
and structure of § 2251.[1]  Section 2251 proscribes the employment
or use of a minor to engage in sexually explicit conduct "for the
purpose of producing" a visual depiction of such conduct.  "In a
general sense, 'purpose' corresponds loosely with the common-law
concept of specific intent."  United States v. Bailey, 444 U.S.
394 (1980).  The statutory text also includes a jurisdictional
requirement that either: (1) "such person knows or has reason to
know that such visual depiction will be transported in interstate
or foreign commerce or mailed;" (2) "that the visual depiction
was produced using materials that have been mailed, shipped or
transported in interstate or foreign commerce by any means,
including by computer;" or (3) "if such visual depiction has
actually been transported in interstate or foreign commerce or
mailed."  Any of the three jurisdictional requirements may be
satisfied in order to find liability under the statute.  With
respect to the first prong, the text does not explicitly require
that the knowledge that the depiction will be mailed arise at the
time of the production.  Morever, it is beyond dispute that the

---

[1] The Government has not been able to identify any case law
directly addressing this question.

second or third jurisdictional prongs may be satisfied by events
which occurred before or after the visual depiction was produced.
Accordingly, in order to read all three provisions consistently,
and in light of the fact that jurisdictional provisions are
typically broadly interpreted, the Court correctly held that the
knowledge or forseeability that the depiction would be mailed
need not occur contemporaneous with its production.

The Court's interpretation is further buttressed by the
history and purpose animating the passage of § 2251.
Specifically, the Congressional findings supporting the Act
suggest that Congress intended to reach producers of child
pornography even where the interstate impact of the depiction
occurred at a later time:

> (D) Intrastate incidents of production, transportation,
> distribution, receipt, advertising, and possession of
> child pornography, as well as the transfer of custody
> of children for the production of child pornography,
> have a substantial and direct effect upon interstate
> commerce because:
>
> (i) Some persons engaged in the production,
> transportation, distribution, receipt, advertising,
> and possession of child pornography conduct such
> activities entirely within the boundaries of one
> state. These persons are unlikely to be content with
> the amount of child pornography they produce,
> transport, distribute, receive, advertise, or
> possess. These persons are therefore likely to enter
> the interstate market in child pornography in search
> of additional child pornography, thereby stimulating
> demand in the interstate market in child
> pornography.
>
> (ii) When the persons described in subparagraph
> (D)(i) enter the interstate market in search of

additional child pornography, <u>they are likely to distribute the child pornography they already produce</u>, transport, distribute, receive, advertise, or possess to persons who will distribute additional child pornography to them, thereby stimulating supply in the interstate market in child pornography.

(iii) <u>Much of the child pornography that supplies the interstate market in child pornography is produced entirely within the boundaries of one state, is not traceable, and enters the interstate market surreptitiously</u>. This child pornography supports demand in the interstate market in child pornography and is essential to its existence.

120 Stat. 587, 623-624 (emphasis added).

In sum, the Court correctly concluded that the jurisdictional requirement that the defendant "knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed" need not occur contemporaneous with the act of employing, using, persuading, inducing, enticing, or coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.

## III. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court deny the defendant's post-trial motions.

Dated: New York, New York
       February 17, 2009

                          Respectfully submitted,

                          LEV L. DASSIN
                          Acting United States Attorney for the
                          Southern District of New York

                   By:    s/Aimee Hector
                          Aimee Hector
                          Glen G. McGorty
                          Assistant United States Attorneys
                          Tel.: (212) 637-2203/2505

<u>CERTIFICATE OF SERVICE</u>

I, Aimee Hector, affirm under penalty of perjury as follows:

1.    I am an Assistant United States Attorney in the Southern District of New York.

2.    On February 17, 2009, I caused a copy of the foregoing Government's Memorandum of Law in Opposition to Defendants' Post-Trial Motions to be served by ECF on:

Royce Russell, Esq.
Edmin & Russell, LLP
286 Madison Ave., Suite 2002
New York, NY 10017

3.    On February 17, 2009, I caused a copy of the foregoing Government's Memorandum of Law in Opposition to Defendants' Post-Trial Motions to be deposited in the outgoing mail of the United States Attorney's Office, for delivery via certified mail to:

William Davis, Inmate Reg. No. 60058-054
MCC New York
Metropolitan Correctional Center
150 Park Row
New York, NY  10007

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

          /s/ Aimee Hector
          Aimee Hector
          Assistant United States Attorney
          Telephone:  (212) 637-2203

Dated:    New York, New York
          February 17, 2009